

# 2004 - 2007
# MASTER CONTRACT
## OF
# TEAMSTERS
# LOCAL UNION NO. 553

## INDEX

|  | Sections | Initials |
|---|---|---|
| General Conditions | 1 - 55 | ............ |
| Oil Drivers | 56 - 65 | ............ |
| Terminal Maintenance Employees | 66 - 75 | ............ |
| Servicemen | 76 - 85 | ............ |
| Dispatchers | 86 | ............ |

## INSTRUCTIONS

This master agreement contains all of the wages and terms and conditions of employment which apply to the various categories of employees represented by Local 553. The sections which are not applicable to the Employer because he does not employ employees in the categories mentioned or because the Union is not the collective bargaining representative of such employees should be stricken out and initialed alongside the above Index.



# MASTER CONTRACT
OF
# TEAMSTERS
# LOCAL UNION NO. 553

## FOR NEW YORK CITY & VICINITY EMPLOYERS

**Coal, Gasoline & Fuel Oil Teamsters, Chauffeurs, Oil Burner Installation, Maintenance, Servicemen and Helpers of New York City and Vicinity, Nassau and Suffolk Counties, New York, Local Union No. 553**
AFFILIATED WITH THE INTERNATIONAL BROTHERHOOD OF TEAMSTERS

AGREEMENT, made and entered into between:

_____

Located at: __ _____

_____

and hereinafter referred to as the Employer, and COAL, GASOLINE & FUEL OIL TEAMSTERS, CHAUFFEURS, OIL BURNER INSTALLATION, MAINTENANCE, SERVICEMEN AND HELPERS OF NEW YORK CITY AND VICINITY, NASSAU AND SUFFOLK COUNTIES, NEW YORK, LOCAL UNION NO. 553, affiliated with the INTERNATIONAL BROTHERHOOD OF TEAMSTERS, 265 West 14th St. New York, NY 10011, hereinafter referred to as the Union, to govern the wages, hours and conditions herein set forth.

## GENERAL CONDITIONS

The following provisions are applicable to all Employers:

### COVERAGE

**SECTION 1:** This Agreement shall apply to the operations of the Employer in New York City (including New York, Kings, Bronx, Queens and Richmond Counties) and Vicinity and in Nassau and Suffolk Counties.

### WAGES AND HOURS

**SECTION 2:** Wages, hours and conditions of employment shall be those set forth hereunder and if the Union enters into any Agreement (herein called "a more favorable Agreement") directly or indirectly, oral or in writing, which permits the employment of its members under terms and conditions less favorable to said members than are herein provided, the Employer shall have the right to demand and receive the said more favorable contract; provided, however, that if the Union denies that another Agreement is a more favorable Agreement, the dispute shall be referred to arbitration under SECTION 35 hereof and the Employer shall be entitled to the more favorable Agreement only upon the affirmative arbitration award that the other Agreement is, in fact a more favorable Agreement.

## Basic Scale of Wages

| Effective; | Dec.16, 2004<br>Hourly Rate/OT Rate | Dec.16, 2005<br>Hourly Rate/OT Rate | Dec.16, 2006<br>Hourly Rate/OT Rate |
|---|---|---|---|
| Fuel Oil Drivers, Dispatchers | $ 25.505 / $ 38.26 | $ 26.005 / $ 39.01 | $ 26.605 / $ 39.91 |
| Terminal Maintenance Men<br>(employed in the industry at least 12 months) | $ 25.505 / $ 38.26 | $ 26.005 / $ 39.01 | $ 26.605 / $ 39.91 |
| Terminal Maintenance<br>Trainees - Class A<br>(employed in the industry at least 8 months) | $ 21.32 / $ 31.98 | $ 21.82 / $ 32.73 | $ 22.42 / $ 33.63 |
| Terminal Maintenance<br>Trainees – Class B<br>(employed in the industry up to 8 months) | $ 16.53 / $ 24.79 | $ 17.03 / $ 25.45 | $ 17.63 / $ 26.44 |
| Servicemen - Class A<br>and Installation Men<br>(employed in the industry for 3 years or longer) | $ 25.755 / $ 38.63 | $ 26.255 / $ 39.38 | $ 26.855 / $ 40.28 |
| Servicemen Trainees and<br>Installation Men Trainees | | | |
| First 12 months | $ 14.75 / $ 22.12 | $ 15.25 / $ 22.87 | $ 15.85 / $ 23.77 |
| Second 12 months | $ 18.30 / $ 27.45 | $ 18.80 / $ 28.20 | $ 19.40 / $ 29.10 |
| Third 12 months | $ 22.05 / $ 33.07 | $ 22.55 / $ 33.82 | $ 23.15 / $ 34.72 |
| Installation Men's Helpers | | | |
| Employed less than<br>12 months in the industry | $ 17.13 / $ 25.69 | $ 17.63 / $ 26.44 | $ 18.23 / $ 27.34 |
| Employed at least<br>12 months in the industry | $ 19.10 / $ 28.65 | $ 19.60 / $ 29.90 | $ 20.20 / $ 30.20 |

### 8 HOUR DAY*

**SECTION 3:** It is understood and agreed upon by both the Employer and the Union that the aforesaid wage be based upon an eight (8) hour working day exclusive of the half hour period* (as near the middle of the day as possible) permitted for lunch or other necessary refreshment or relief. No employee shall be required to work less than a full 8 hour day. *(Lunch period not applicable to terminal maintenance employees; see Section 66.)

### SATURDAY WORK

**SECTION 4:** Any man ordered out to work on Saturday who does report for work shall be paid at the rate of time and one-half with the guarantee of a full day's pay at the rate of time and one-half.

### SUNDAY WORK

**SECTION 5:** Employees ordered out to work on Sunday shall be paid for the full day at double time rate and shall also be paid double time for each hour worked after eight (8) hours.

## WORK AND PAY WEEK

**SECTION 6:** For all purposes the work week shall commence on Monday morning. Payday shall be once each week, no later than Friday, with the week ending as of the Wednesday immediately prior to the Friday. When a holiday falls on a payday, the men shall be paid on the day before such holiday. All pay earned by the employee, including weekday overtime and premium pay, and premium pay and overtime pay for Saturday and Sunday, shall be included in the employee's pay check on the payday immediately following said Sunday. Any overtime pay earned on Wednesday may be carried over to the following week's pay. The Employer shall pay the employee's wages in cash, or provide paid check-cashing time or check-cashing facilities for his employees.

## CONTRACT VIOLATION

**SECTION 7:** It is understood and agreed that it will not be considered a violation of this Agreement for the Union to take action against any Employer who violates this contract, or any part thereof, provided that the Union notifies the New York Oil Heating Association, Inc., and that this notification takes place at least eight (8) hours before any action of the Union commences.

## UNION SHOP

**SECTION 8:** On and after thirty (30) calendar days following the beginning of employment or the execution of this Agreement, whichever is later, all present and all new employees covered by this Agreement shall be required as a condition of employment to become and remain members of the Union. The Employer shall deduct from the employee's wages and turn over, once each month no later than the 10th day of the month, to the Secretary-Treasurer of the Union, all current monthly dues including administrative dues payable on all hours of drawn pay of all such employees who individually and voluntarily certify to the Employer, in writing, that they authorize such deductions. Such authorization shall be irrevocable for the duration of this Agreement or for one (1) year, whichever occurs sooner, but such authorization shall be automatically renewed from year to year, unless written notice of revocation is given by the employee prior to the expiration of any yearly period. The failure of any employee to maintain his Union membership in good standing as required herein shall, upon written notice to the Employer by the Union to such effect, obligate the Employer to discharge such person immediately. This section shall be applicable only to employees lawfully required to become and remain members of the Union under the provisions of this contract.

## PROBATIONARY PERIOD

**SECTION 9:** During the first forty-five (45) days of employment, new employees other than new terminal maintenance employees shall be deemed to be on probation. New terminal maintenance employees shall be deemed to be on probation for the first ninety (90) days of employment. There shall be no restriction upon the right of the Employer to discharge a probationary employee and such discharge shall not be subject to the grievance and arbitration procedure herein provided.

## SCOPE OF AGREEMENT

**SECTION 10:** Except as herein otherwise provided, it is the intention, understanding and agreement of the parties that the Employer's work within the categories covered by this agreement shall be performed by employees of the Employer employed under the terms of this agreement.

## WORK PROTECTION

**SECTION 11:** The Employer shall not contract out or subcontract to others work in any category covered by this Agreement, unless (a) all employees on the seniority list are fully employed, (b) the Employer has given the Union reasonable advance notice of the need for additional employees, and (c) Pension Fund contributions are made as required by Section 49. In the event that the Employer utilizes truckers in violation of this section, all employees on the seniority list who did not work and should have worked on the day or days that such violation occurred, shall be paid for that day or those days.

## LETTER AND SPIRIT

**SECTION 12:** The Union and the Employers recognize that the maintenance of fair union standards and conditions of employment are in their mutual best interests and it is therefore agreed that the parties shall cooperate to maintain and enforce the letter and spirit of this Agreement and to curb abuses and to prevent evasions of each and every part of the Agreement including the sections relating to subcontracting.

## SUBCONTRACTING COMPLAINTS

**SECTION 13:** The parties agree that in the event that any complaint or charge is made that the provisions of this Agreement relating to subcontracting have been avoided or evaded or otherwise abused, any party shall have the choice of either of the following procedures for dealing with the matter:

(a) By filing a demand in writing for arbitration with the Union and with the Executive Vice President of the New York Oil Heating Association, Inc. for submission to a Joint Union and Management Committee. This Committee shall consist of four (4) members, two (2) Union representatives to be designated by the Union, and two (2) management representatives to be designated by the New York Oil Heating Association, Inc. The charge, dispute, or grievance shall forthwith be referred to the Joint Committee which said Joint Committee shall act as a Board of Arbitrators. If the Joint Committee fails to resolve the dispute within five (5) working days, after receipt of the complaint or charge, or if the Joint Committee deadlocks, the dispute shall be forthwith referred for arbitration to the American Arbitration Association at New York, New York ("AAA").

(b) By filing a demand in writing for arbitration of the charge, dispute or grievance directly with the AAA.

**SECTION 14:** If a charge, dispute or grievance pertaining to subcontracting is submitted to the AAA, the AAA shall submit a Panel of Arbitrators to the parties within forty-eight (48) hours after receipt of the request therefore the parties shall select an Impartial Arbitrator twenty-four (24) hours after the receipt of the Panel and the Arbitrator shall have a period of ten (10) days after selection to hear and decide the issue involved. The award of the Joint Committee or the Arbitrator designated by the AAA, as the case may be, shall be final, binding and enforceable in any court of competent jurisdiction.

## DISHONESTY

**SECTION 15:** Any employee who shall be proved to be dishonest shall be immediately dismissed from his job.

## INTOXICATION

**SECTION 16:** Any employee who shall be found intoxicated or under the influence of unlawful drugs while on duty, shall be discharged.

## DANGEROUS AREAS

**SECTION 17:** The Union and the Employer will review, at the Union's request, work to be performed in dangerous areas so as to schedule the work in the least dangerous hours of the day. If the parties fail to reach agreement, the matter will be subject to the grievance and arbitration provisions of this agreement.

## DISCRIMINATION

**SECTION 18:** There shall be no discrimination against employees by reason of race, creed, color, national origin, age, sex, sexual orientation, affectional preference, marital status or veteran status. Whenever the male gender is used herein it shall be deemed to include the female.

## SHOP STEWARDS

**SECTION 19:** The Union shall have the right to designate Shop Stewards from the employees on the seniority list, and the Union shall have the right to remove such Shop Stewards. No Shop Steward has the right to tie up a job unless authorized by a delegate, who is so authorized in full accordance with the terms and provisions of this contract.

## EMPLOYER PREMISES

**SECTION 20:** The Employer agrees to permit a Union representative to visit the Employer's premises during working hours to discuss grievances.

## PICKET LINES

**SECTION 21:** It shall not be the duty of any employee nor shall any employee at any time be required to cross any lawful primary picket line. Refusal of an employee at any time to cross a lawful primary picket line shall not constitute insubordination, nor cause for discharge, or any disciplinary action. Nor shall the employer permanently replace such employee. This provision is not intended to prohibit the Employer from dealing with other employers, but is entered into solely for the purpose of establishing the rights of individual employees to refrain from any act or conduct which in their opinion may be inconsistent with sound trade union principles.

## INCOMPETENCE OR SHIRKING

**SECTION 22:** The Union agrees that it will not tolerate, uphold, condone, permit or acquiesce in incompetence or shirking on the part of employees working under this Agreement, and that it will use everything at its command to eliminate incompetence or shirking.

## HOLIDAYS

**SECTION 23:**

(a) Men who work two (2) days in any week in which one of the following holidays occurs shall be paid a day's pay for such holiday: New Year's Day, Martin Luther King's Birthday, Lincoln's Birthday, Washington's Birthday, Memorial Day, July 4th, Labor Day, Columbus Day, Election Day, Veteran's Day, Thanksgiving Day and Christmas Day, and any holiday called for by the State or Federal government. If they work on any of these holidays, they shall, except for Christmas Day, New Year's Day or Thanksgiving Day, be paid an additional day's pay, and two (2) hours pay for each hour after eight (8) hours worked. If they work on Christmas Day, New Year's Day or Thanksgiving Day, they shall be paid a total of triple time for such work. In holiday weeks, time to be figured as beginning on Monday. A new man who is not on the list, and who begins work in a holiday week, is not entitled to the holiday pay. It is agreed that work will not be shifted or inequitably crowded into certain days in order to evade the provisions of this paragraph.

(b) If any of the above holidays falls on a Saturday and a man who is ordered out to work does report for work, his rate of pay will be two and one-half (2 1/2) times the basic daily pay for the first eight (8) hours with a guarantee of eight (8) hours work and two and one-half (2 1/2) times the basic hourly rate of each hour worked thereafter, except for work on Christmas Day, New Year's Day or Thanksgiving Day, for which they shall receive triple time.

## VACATIONS*

**SECTION 24:** Any employee covered by this Agreement who has worked for the Employer and has drawn pay in the preceding calendar year for seventy-five (75) days shall receive five (5) days' vacation with pay. Any employee who has worked for the Employer and has drawn pay in the preceding calendar year for one hundred ten (110) days shall receive two weeks' (ten days) vacation with pay.

**SECTION 25:** An employee who has worked for the Employer for at least ten (10) consecutive years, and who has worked for the Employer and has drawn pay in the preceding calendar year for:
      (a) 90 days, shall receive three (3) weeks' (15 days) vacation with pay; or
      (b) 75 days, shall receive two (2) weeks' (10 days) vacation with pay.

**SECTION 26:** An employee who has worked for the Employer for at least fifteen (15) consecutive years, and who has worked for the Employer and has drawn pay in the preceding calendar year for 100 days, shall receive four (4) weeks' (20 days) vacation with pay.

**SECTION 27:** An employee who will meet the drawn pay eligibility requirement for vacation in the year prior to his 10th or 15th year shall be granted his 10-year or 15-year paid vacation in the period between April 15th and October 15th of his 10th or 15th year, whichever is applicable, provided he is on the seniority list of the Employer on April 15th of his 10th or 15th year. Service for any part of a man's first year shall constitute one (1) full calendar year's service, and all subsequent consecutive calendar years of service shall be added to that year for the purpose of determining years of eligibility for vacation purposes. An employee who dies between January 1st and April 15th of his 10th or 15th year shall be entitled to vacation benefits as if he were on the seniority list on April 15th of such year.

*(This provision is modified as to Servicemen, see Section 83.)

**SECTION 28:** Each employee's vacation time shall be granted in consecutive days and weeks.

**SECTION 29:** All days off for which pay is drawn shall be counted as days worked in computing eligibility for vacation pay. Employees who have been awarded Workers' Compensation for an injury which occurred in the preceding calendar year will receive credit for the period covered by the award as if such period had actually been worked, but in no event to exceed a total of 30 days.

**SECTION 30:** Vacation times shall be selected by the men in the order of seniority, and such vacation times shall fall within the period April 15th to October 15th each year, it being understood that the vacation schedule shall provide for sufficient men to do the available work during each of the weeks of the vacation period.

**SECTION 31:** At least one (1) employee on the seniority list in each classification shall have the right to select a holiday week in his vacation time.

**SECTION 32:** In any case where the vacation arranged for an employee included one of the holidays listed in SECTION 23, the employee is to receive the holiday pay for that holiday in addition to vacation pay.

**SECTION 33:** In any event, the Employer shall post the vacation schedule no later than May 1. After the vacation schedule is posted, the Employer shall not initiate any change in the posted vacation time assignments without the prior approval of the employee or employees affected by any such proposed vacation time change.

A veteran who, upon leaving the military service, has returned to work for the Employer for whom he worked prior to entering the military service, and who, on April 14 of any year is working for said Employer is entitled to a vacation provided that he was in the military service during any part of the preceding calendar year.

Men entering the military services shall be paid earned vacation wages at time of entering such service.

Any successor, heir or assign of the Employer concerned herein shall assume full responsibility for the accrued vacation time and the employees concerned shall be granted their vacations accordingly.

Any employee who at the time of his death has any vacation due him, the Employer shall compensate the next of kin to the extent of wages due to the employee.

In the event of termination of employment for any reason the employee shall receive all his vacation pay accrued to the date of termination, vacation pay eligibility shall be tallied so as to include service in the current calendar year up to the date of termination as well as service in the preceding calendar year.

## DISCHARGE & DISCIPLINE

**SECTION 34:** The Employer shall not discharge nor suspend any employee except a probationary employee without just cause.

## ARBITRATION

**SECTION 35:** Should any difference or dispute arise during the life of this Agreement regarding the meaning, interpretation, or application of any of the provisions of this agreement, or regarding any other grievance which may arise between the parties, which cannot be adjusted by the representatives of Local 553, I.B.T., and the concerned Employer and/or the concerned Employer association, the same is to be submitted to arbitration. Either party to the dispute may place the disputed issue in arbitration by request for arbitration in writing served upon the other party and upon the New York State Mediation Board within ten (10) days from the last date of attempted negotiated settlement between the parties. The New York State Mediation Board shall appoint one of its staff mediators as the Arbitrator and shall arrange for arbitration of the matter in dispute. However, the Arbitrator shall hear the dispute within five (5) days from the date the dispute was referred to arbitration, and he shall render his decision within five (5) days from the last date of hearing, except if otherwise mutually agreed upon by the parties. The decision of the Arbitrator shall be binding upon both parties. The expenses of arbitration, if any, shall be shared equally by the parties. Any employee who shall be required to attend or testify at a grievance meeting or arbitration hearing shall not suffer any loss in wages by reason thereof. There shall be no strikes or lockouts or work stoppages of any nature whatsoever pending a decision during the term of the Agreement.

# WORKERS' COMPENSATION

**SECTION 36:**
(a) It shall not be deemed a violation of this Agreement for the employees covered by this Agreement to refuse to work for any individual, partnership or corporation whose employees are not covered by compensation insurance in accordance with the provisions of the Workers' Compensation Law of this State, or whose trucks are not insured for personal injury and property damage insurance.

(b) Any employee posted for work but absent because of compensation hearing or examination by insurance company, or required court attendance because of Company business, if he is working for the same Employer, is to be paid a full day's pay provided he shall work such portion of the day as may be reasonable.

(c) When a man who is not booked for work is summoned to appear, or is requested by the Employer to appear, in court on Employer business, the Employer shall arrange for the employee to be paid an amount equal to a day's pay for each day in court. In addition, the Employer shall make the required pension contribution to the Pension Fund for such days. Payment for such days shall not be counted as days worked or drawn-pay days for any other purposes under the contract.

# TRAFFIC VIOLATIONS

**SECTION 37:** A driver who received a summons for a traffic violation or matter calling for points against a driver's license (other than for speeding, passing a light or a stop sign, or for any other moving violation not involving the driver's effort to position his truck to enable him to make a delivery or to stop at a location to perform service or installation work) shall be paid, if he is booked or would have been booked for work, a full day's pay for each such day's absence because of his appearance at the Motor Vehicle Bureau or in court to answer the summons. If the violation is one that is incurred in the performance of work for the Employer and does not involve points against the driver's license, the fine shall be paid by the Employer. A driver who is booked or would have been booked for work and chooses to appear at the Motor Vehicle Bureau or in court when summoned on such a matter shall, on the day of such appearance, work such portion of the day as may be reasonable. The Employer shall pay any fines for parking violations (except parking at a fire hydrant) levied against employees who incur such penalties while doing service or installation work, regardless of whether the vehicle involved is owned by the employee or supplied by the Employer.

# LIFE AND ACCIDENTAL DEATH INSURANCE

**SECTION 38:** The Employer agrees to provide insurance and Welfare benefits for all employees covered by this contract for the purpose of providing the following benefits effective January 1, 2005;

> $85,000.00 Group Life Insurance for employees only.
> $85,000.00 Accidental death and dismemberment insurance,
> occupational and non occupational, employees only.

Total benefits, including life insurance, are $170,000.00 in case of accidental death.

It shall be the obligation of the Employer providing life insurance coverage under the contract, to purchase waiver of premium protection for continued life insurance coverage for any employee who up to the age of 60 may become totally disabled.

# DISABILITY INSURANCE

**SECTION 39:** The Employer agrees to provide $300 weekly benefit for accident, non occupational, or sickness, if not covered by Worker's Compensation Law, payable for 26 weeks for any one disability, from the first day of accident or sickness, for employees only, provided that in the case of sickness, the sickness lasts at least five working days. Further, in the event that the New York Disability Law is changed to increase the amount over $300 weekly or to increase the duration of disability benefits over 26 weeks during the term of the contract, the contract shall be deemed amended to include such increased amount or duration effective as of the effective date of the change in Law. The several Employer groups and individual insurers which provide coverage for the disability benefits provided under the collective bargaining contract shall conform their practice so that the benefits will be calculated uniformly on a seven (7) day week basis.

# CERTIFICATE OF FITNESS

**SECTION 40:** The Employer shall reimburse a Terminal maintenance man the cost of any certification that is required to obtain by applicable laws, rules or regulations.

## NEW YORK OIL HEATING INSURANCE FUND
## COMPREHENSIVE MEDICAL & DENTAL BENEFITS

**SECTION 41:**

(1) Effective January 1, 2005, the Employer agrees to provide Group Hospital-Surgical-Medical coverage in accordance with the provisions of the Summary Plan Description for the New York Oil Heating Insurance Fund. The Employer shall maintain the level of benefits as described in the Summary Plan Description during the term of this Agreement. Medical services are available to participants on an "in network" (The Beech Street Network) favored basis or outside the network on a less favored basis. Prescription Drug coverage is on an "in network" basis only, through the Eckerd Pharmacy Benefit Services. A description of the Plan benefits (including any limitations and exclusions), and the procedures to be followed in presenting claims are contained in the Summary Plan Description.

(2) Outlined below are the highlights of the schedule of benefits:

### SCHEDULE OF BENEFITS
### COMPREHENSIVE MAJOR MEDICAL EXPENSE BENEFITS

**Calendar Year Deductible**

| | NETWORK | OUT OF NETWORK SINGLE/FAMILY |
|---|---|---|
| Members | No Deductible | $500 / $1,500 |

**Benefit after deductible and Out-of-Pocket met**

| | | |
|---|---|---|
| Person per Calendar Year | 100% | 70% / 30% up to Beech Street Allowance to a maximum of $5,000 |

**Calendar Year Out-of-Pocket Limit**

| | NETWORK | OUT OF NETWORK |
|---|---|---|
| Individual/Family | 0 | $500 / $1,500 |

| | |
|---|---|
| **Lifetime Medical Benefit** | $1,000,000 Lifetime for Inpatient/Outpatient combined, In and Out of Network combined. |

### HOSPITAL SERVICES
### 365 Days Coverage

| | NETWORK HOSPITAL | OUT OF NETWORK HOSPITAL SINGLE/FAMILY |
|---|---|---|
| **Deductible** | No Deductible | $500/$1,500 |
| **Inpatient Hospital, Intensive Care Unit, Miscellaneous Services and Supplies** | 100% All Services | 70% after Deductible up to Beech Street Allowance |
| **Rehabilitation** | 100% All Services Maximum 30 days | 70% after Deductible up to Beech Street Allowance Maximum 30 days |

9

## NEWBORN CARE

| | NETWORK | OUT OF NETWORK SINGLE / FAMILY |
|---|---|---|
| Newborn Inpatient Care | 100% All Services | 70% after Deductible up to Beech Street Allowance |

Precertification penalty $125 per day if the precertification requirements are not followed, with a maximum of $250 per confinement, if hospital stay is ultimately approved. Out-of-Network allowances are calculated based on what the In-Network allowances would have been.

## HOSPITAL OUT- PATIENT SERVICES

| | NETWORK | OUT OF NETWORK SINGLE/FAMILY |
|---|---|---|
| Deductible | No Deductible | $500 / $1,500 |
| Outpatient Hospital Expenses, Pre-Admission Testing (within 7 days of admission), Outpatient Surgery, | 100% | 70% after Deductible up to Beech Street Allowance |
| Outpatient X-ray/Laboratory or Diagnostic Testing | $25 co-payment then 100% | 70% after Deductible up to Beech Street Allowance |

## EMERGENCY ROOM*

| | NETWORK | OUT OF NETWORK SINGLE/FAMILY |
|---|---|---|
| Illness/Accident | $60 co-payment then 100% | $60 co-payment then 100% up to Beech Street Allowance |
| Emergency Room Admissions | | Subject to the emergency care Coverage outlined in the Benefit Plan. Applies in network or out of network. |

*Emergency Room includes services billed by the Hospital and Emergency Room Physician.
**Note: The co-payment is waived if admitted. The co-pay is applied to each outpatient visit.
Out-of-Network allowances are calculated based on what the In-Network allowances would have been.

## PHYSICIAN SERVICES

| | NETWORK | OUT OF NETWORK SINGLE/FAMILY |
|---|---|---|
| Deductible | No Deductible | $500 / $1,500 |
| Physician's Office Visits Primary Care, Specialist | $25 co-pay** then 100% | 70% after Deductible up to Beech Street Allowance |

**Note: The co-payment applies to lab, x-ray, and injections provided in the Physician's office.
Services outside of the Physician's office are paid subject to $25 co-pay, then 100%.

|  | NETWORK | OUT OF NETWORK<br>SINGLE/FAMILY |
|---|---|---|
| Outpatient Surgery<br>Inpatient Hospital<br>Physician Visits | 100% | 70% after Deductible<br>up to Beech Street Allowance |

|  | NETWORK | OUT OF NETWORK |
|---|---|---|
| Diagnostic Testing<br>MRI/CT Scan/PET Scan/<br>Sonogram/Ultrasounds | $25 co-pay then 100% | 70% after Deductible<br>up to Beech Street Allowance |

**Out-of-Network allowances are calculated based on what the In-Network allowances would have been.**

## PREVENTIVE CARE

|  | NETWORK | OUT OF NETWORK |
|---|---|---|
| Deductible | No Deductible | $500 / $1,500 |
| Well Baby Care<br>(to age 5)<br>Office Visit | $25 co-payment<br>then 100% | 70% after Deductible<br>up to Beech Street Allowance |
| Well Child (ages 6 to 19)<br>No Visit Immunization | $25 co-payment<br>then 100% | 70% after Deductible<br>up to Beech Street Allowance |
| Immunization/Vaccination<br>(over age 19) | $25 co-payment<br>then 100% | 70% after Deductible<br>up to Beech Street Allowance |
| Pap Smear<br>One per year, 18 years or older | 100% | 70% after Deductible<br>up to Beech Street Allowance |
| Mammography | 100%<br>One every other year prior to age 40<br>One per year over age 40 | 70% after Deductible<br>up to Beech Street Allowance |
| PSA (prostate cancer test)<br>1 per year | 100% | 70% after Deductible<br>up to Beech Street Allowance |
| Annual Physical | $25 co-payment<br>up to Reasonable & Customary<br>of the Geographic Area of the Physical | 70% after Deductible<br>up to Beech Street Allowance |

**Out-of-Network allowances are calculated based on what the In-Network allowances would have been.**

## PHYSIOTHERAPY

|  | NETWORK | OUT OF NETWORK |
|---|---|---|
| Physical Medicine,<br>Physical Therapy,<br>Occupational Therapy | $25 co-payment<br>Maximum 24 visits<br>per year combined. | 70% after Deductible<br>up to Beech Street Allowance<br>Maximum 24 visits per year combined. |
| Chiropractor | $25 co-payment | 70% after Deductible<br>up to Beech Street Allowance |

**Out-of-Network allowances are calculated based on what the In-Network allowances would have been.**

# PRESCRIPTION DRUGS

No Benefit through Medical Plan, In or Out of Network.*
**\*Prescription Drugs covered by Eckerd Pharmacy Benefit Services.**

|  | Retail, up to 30-day supply | Mail Order, up to 90-day supply |
|---|---|---|
| Generic | $15 | $30 |
| Formulary Brand | $30 | $60 |
| Non-Formulary Brand | $40 | $80 |

# DENTAL BENEFITS
## PREDETERMINATION IS RECOMMENDED

### IN NETWORK BENEFITS

Dentist co-payment per visit ......................... None
Percentage payable by the Plan, per Calendar Year
Orthodontia Coverage ............................... up to 16 years of age*
Network Providers ................................... 100%
(See separate MetroDent Directory)

### NON-NETWORK BENEFITS

Calendar Year Deductible ...........................N/A

Benefit Period ............................................. Calendar Year

Orthodontia Coverage ................................. up to 16 years of age*

Dental Percentage Payable .......................... 100% of scheduled allowances

Non Participating Dentists will be paid based on the PPO fee schedule.
Patient will be responsible for any charges not paid.

*Orthodontia treatment must begin prior to covered dependent's 16 th birthday. Plan will pay for Orthodontia treatment up to the covered dependent's 19th birthday.

By using the Network Provider of Self-Insured Dental Services, in most cases all charges will be covered by the Plan with no out of pocket expenses to you. The only out of pocket expense the provider is allowed to charge you is for non-covered services, if any. The benefits are payable based on the plan fee schedule.

The foregoing is available to all employees, except that employees hired on or after January 1, 1991 who have not drawn pay under a Local 553 contract within the preceding two calendar years prior to the date of hire, shall only be eligible for single coverage as set forth above during their first year of employment, and these employees may purchase family coverage during this time at their own expense. Dependents shall include children between the ages of 19 and 23, if attending school full time which shall be defined as taking classes at an accredited school for a minimum of twelve hours a week.

(2) Effective December 16. 1999, for pensioners who retire on or after January 1, 1978 at age 55 or over, major medical insurance with a top limit of $60,000 with a $500 deductible and with co-insurance of 30%-70% will be provided until they reach age 65.

(3) Effective December 16, 1999, for pensioners who retire on or after January 1. 1979 on a 30 year service pension, regardless of age, major medical insurance with a top limit of $60,000 with a $500 deductible and with co-insurance of 30%-70% will be provided until they reach age 65.

(4) Effective January 1, 2005, for pension plan participants that are vested, but not age 55 and who have left covered employment, in order to be eligible to receive retiree major medical benefits, the employee must return to work and earn at least three (3) years consecutive pension credits.

## LAY-OFF COVERAGE

**SECTION 42:** Any employee laid off for a period not exceeding six (6) months shall be privileged to continue his medical and dental insurance at his own expense by depositing with the Employer the cost thereof monthly in advance.

## WAITING PERIOD AND DISABILITY COVERAGE

**SECTION 43:**
(a) Hospitalization, surgical, medical, and dental expense benefits shall be provided by the Employer to employees and their families without waiting period, and the said benefits shall be applicable to any employee (and his family) without waiting period immediately upon his return from a seasonal leave of absence or temporary layoff.

(b) All employees shall be deemed eligible for Benefit coverage and shall be covered from the date of employment until the end of the month in which such employee was employed. Employees who have completed five years of employment shall be covered from the date of employment until the end of the month succeeding the month in which such employee was employed for one or more days. In addition, all employees who work five or more days in any month shall be covered until the end of the month following the month of such employment. However, during the period from May 1 through October 1, all employees must work 5 days or more in any month in order to receive coverage in the succeeding month.

(c) Employees who are disabled during the period of coverage due to a temporary or permanent disability, or workers' compensation, and pensioners who are granted disability pensions shall be covered under all the benefits provided in the Benefit program and the insurance policies implementing this program, subject to the limitations set forth therein during the period of that disability up to a maximum of one (1) year from the date of such disability, provided that proof of continued disability in the nature of a doctor's certificate shall be submitted to the Employer on a monthly basis. If the employee or pensioner takes employment such disability shall be deemed to have terminated.

## BENEFITS FUND

**SECTION 44:** (a) The Employer agrees to contribute to the Local 553 BENEFITS FUND in the manner hereinafter described to provide the benefits described below. The said Benefits Fund shall be as established by the Union and the Industry pursuant to the Agreement and Declaration of Trust now in effect. The Employer and the Union agree to execute said Trust Agreement, and any amendments thereof adopted by the Trustees, immediately upon demand.
(b) The Employer agrees that on or before the 10th day of each month it will make a contribution to the said Benefits Fund at the rate appropriate as determined by the Fund's consultants, the Martin E. Segal Company, to fund such benefits as are provided under paragraphs (c) of this section. The contribution required to fund the benefits provided under paragraph (c) shall be five cents (5¢) per hour. Said payments shall be made in the same manner at the same time as contributions to the Local 553 Pension Fund. Such contribution shall be for all hours to a maximum of 2080 for each employee per calendar year effective January 1. 2002. The Trustees shall administer the Fund in order to provide the following benefits and may adopt additional benefits to be provided by the Fund subject to the mutual agreement of the Union and the Company.
(c) Effective January 1, 2005 the Fund shall provide for each employee eligible for benefits under the other Welfare provisions of this contract, and for each new employee employed by the Company with thirty (30) or more calendar days after the beginning of his employment, the employee and his dependents (spouse and unmarried children up to the age of nineteen (19) or up to twenty-three (23) years, if attending school full time, which shall be defined as taking classes at an accredited school for a minimum of twelve hours a week), with pre-paid optical care and eyeglass service under the General Vision Services One Price Optical Program ($75.00), which includes the following: General Vision Services Comprehensive Eleven Point Eye Examination; selection of various frames up to a retail value of $150.00; selection of any prescription lens in Glass or Plastic OR39 including Single Vision, Bifocals, Trifocals, Safety and Oversize (and with cosmetic tinting, prescription sunglasses, and sun-sensitive lenses also included); and hard or soft daily wear contact lenses, except that there shall be a fee of $95.00 for Extended Wear Contact Lenses.

## SICK DAYS, JURY DUTY AND MISCELLANEOUS

**SECTION 45:**
(a) Employees who quit their employment with their Employer shall be ineligible to receive any of the Welfare Benefits set forth above from the date of such quit, except such benefits as have previously accrued until the same are fully paid.

13

(b) So long as an employee is fully covered at all times by the Welfare benefits provided in this contract, the contract shall not be considered to require coverage by more than one (1) Employer at a time.

(c) An employee who has at least two (2) years of service with the Employer and who is working or posted for work shall be granted two (2) days off with pay in the event of a death in the family. 'Family" is defined as including the employee's parents (or foster parents), spouse, mother-in-law, father-in-law, brothers, sisters, and children.

(d) In the event an employee is laid off or discharged and the Employer's action is challenged by the Union, payments in behalf of the employee by the Employer shall be continued to the Welfare program and the employee shall be fully covered by all Welfare benefits from the date of such action by the Employer through the date of settlement by arbitration or otherwise of the dispute over the Employer's action or until a settlement agreement is duly signed.

(e) Probationary employees who have not been covered for Welfare benefits under this Agreement immediately prior to their employment with the Employer shall not be eligible for Welfare coverage until thirty (30) days after the first day of employment.

(f) The Employer will cooperate with the Union fully to insure that drivers will not be made liable for operating their trucks on unmarked routes.

(g) If any insurance carrier now providing benefits called for by the contract is not providing satisfactory service to covered employees the Union will have the right to notify the Employers' Association and request that arrangements be made to provide the same or similar benefits through other insurance carriers.

(h) There will be a maximum of 5 sick days which will be granted on the basis of one for each 40 days actually worked in the preceding calendar year. For the second, third, fourth or fifth days entitlement, a major fraction of the 40 days will be sufficient. Sick days will not be permitted immediately before or immediately after a holiday. Employees shall not be entitled to sick days for any days for which the employee is receiving weekly disability as provided in Section 39, above. However, unused sick days will at the end of the year be added to vacation credit.

(i) Employees who are required to serve on a jury during a period when they would be scheduled to work shall be entitled to receive the difference between their jury pay and the straight time wage which they would otherwise have earned. The maximum amount payable under this provision will be for 10 days of jury duty over a two year period of this Agreement. If the Employer wants the employee to be excused he will make such request in writing and the employee will deliver such written request to the Court.

(j) The Employer may require pre-employment urinalysis as a condition of employment of new employees, applying for employment if the applicant has not been employed in covered employment under a collective bargaining agreement with Local 553 at any time during the thirty months prior to the employee's application for employment. The applicant must be notified that he must provide a urine specimen to be tested for drugs. Applicants must be notified of the test results within 60 days. Applicants who test positive must be notified of what drug was found.

(k) An employee will lose his seniority if;
    (a) the employee quits voluntarily
    (b) the employee is justifiably discharged
    (c) in the case of an employee promoted to a supervisory position, the employee fails to return to a non-supervisory position within six months of the date the employee is promoted to a supervisory position with the employer.
    (d) the employee is not employed by the employer for eighteen (18) months, (but in the case of an employee injured on the job and covered under workmen's' compensation, twenty four (24) months).

(l) No provision of this agreement is intended to create any obligation on the part of the Union which is enforceable against the Union by individual employees.

(m) Probationary employees shall not be entitled to seniority rights with respect to eligibility for work on Saturdays and Sundays.

## EMPLOYER VIOLATIONS

**SECTION 46:** Failure on the part of the Employer to make the payments required therefore, or otherwise to provide and maintain the insurance and Welfare benefits specified above, shall render the Employer personally liable to the employees (or their beneficiaries or dependents, as the case may be) for the payment of the said benefits, and the rights of the employees to collect said benefits shall be enforceable in the same manner and on the same basis as wages. Violation by the Employer shall also entitle the members of the Union to refuse to work.

## PENSION FUND

**SECTION 47:** The Employer agrees to contribute to the LOCAL. 553 PENSION FUND in the manner hereinafter described to provide actuarially sound retirement benefits for employees of the Employer covered by the collective bargaining agreement. The said PENSION FUND shall be as established by the Union and the Industry pursuant to the Agreement and Declaration of Trust now in effect. The Employer and the Union agree to execute the said Trust Agreement, and any amendments thereof adopted by the Trustees, immediately upon demand.

# PENSION BENEFITS

**SECTION 48:**

(a) The following pension benefits shall be provided for employees retiring on or after January 1, 2005 at age 55 and over;

| Years of Service | Monthly Amount of Pension |
|---|---|
| 10 | $ 1,050.00 |
| 15 | $ 1,575.00 |
| 20 | $ 2,100.00 |
| 25 | $ 2,700.00 |

(a)(i) However, employees who have not earned any service credits prior to January 1. 1991 must be at least age 62 to be eligible for the above pension benefits.

(b) Employees having 30 years or more of service the following pension benefits will be paid regardless of age:

| Years of Service | Monthly Amount of Pension |
|---|---|
| 30 | $ 3,300.00 |
| 35 | $ 3,900.00 |

(b)(i) For every year of service after 35 years, the monthly pension benefits will continue to be increased by an additional $120.00.

(c) Years of service between 10 and 20 will be pro-rated at the rate of $105.00 per month per each year of service. Years of service after 20 years will be pro-rated at the rate of $120.00 per month per year of service. Accrual rates are applied as set forth in the Rules and Regulations of the Local 553 Pension Fund.

(d) In case of the death of a disability pensioner the guaranteed benefits to his beneficiary will be paid regardless of the age he attained on the date his disability was incurred.

In case of the death of any employee with at least 10 years of service the death benefit will be paid to his beneficiary regardless of the age at which he dies.

# EMPLOYER CONTRIBUTIONS

**SECTION 49:**

(a) The employer agrees that on or before the 10th of each month, he will make contributions to the said PENSION FUND for all hours of which pay is drawn by an employer for each of his employees covered by the collective bargaining agreement at the rate of 50 cents (50¢) per hour commencing as of December 16, 2004; and at the rate of $1.00 per hour effective December 16, 2005; and at the rate of $1.76 per hour effective December 16, 2006. Such contribution shall be for all hours to a maximum of 1700 for each employee per calendar year. The Martin E. Segal & Co. shall make a finding whether the margin between the cost of the pension plan as determined at any appropriate time and the then current contribution rate is below 10% and if the Segal Co. finds that the margin is below 10%, it shall determine the increase in the contribution rate necessary to raise the margin to 10%, and the employers shall make the increased contribution retroactive to the effective date determined by the Segal Co. with interest at the rate earned by the plan, and such findings and determinations by the Segal Co. shall be final and binding and shall not be subject to arbitration, court action or any other form of challenge. The Union may request that the Segal Company perform a special evaluation of the aforesaid rates twice during the contract period, as needed. The results of such review shall be final, and shall not be subject to arbitration, court action, or any other form of challenge.

(b) The Employer shall also make the required contribution to the PENSION FUND for each day on which a man who is not booked for work is summoned to appear, or is requested by the Employer to appear in court on Employer business. The Pension Plan of this PENSION FUND as established by the Board of Trustees shall at all times comply with the ruling of the Internal Revenue Service so as to continue in effect the ruling as to the deductibility of the employer contributions. The signing of this contract shall constitute the simultaneous assumption by the Employer of all obligations under the Agreement and Declaration of Trust governing the PENSION FUND. Upon request an Employer shall promptly sign a copy of such Agreement and Declaration of Trust. The increased pension contributions by the Employer shall be used to provide immediate additional improvements in pension benefits.

(c) In the event an employee is laid off or discharged and the Employer's action is challenged by the Union, the Employer agrees that if such dispute is settled by arbitration or otherwise and the settlement results in the payment of back wages to the employee, the Employer shall contribute to the PENSION FUND the appropriate contributions for all hours covered by the back wages payment. Failure by the Employer to make the required pension contributions shall constitute a breach of this contract.

(d) Whenever the Employer utilizes a person not covered by this Agreement to perform covered work, the Employer shall contribute to the Local 553 Pension Fund ("PENSION FUND") one (1) day's contribution for such day or part thereof for each person so utilized: provided that this shall not apply (1) if such person is then covered by a collective bargaining agreement with this Union requiring contributions to the PENSION FUND or (2) where the work involved is not customarily performed in the normal and usual course of employment of the covered employee. This provision shall not be construed to permit an Employer to use other than covered employees in any respect otherwise in violation of this Agreement.

## DEFERRED COMPENSATION FUND

SECTION 50: (a) The Employer agrees to contribute to the LOCAL 553 DEFERRED COMPENSATION FUND in the manner hereinafter described to provide a defined contribution plan for eligible employees of the Employers covered by the collective bargaining agreement. The said DEFERRED COMPENSATION FUND shall be established by the Union and the industry pursuant to an Agreement and Declaration of Trust now in effect. The Union and the Employer agree to execute the said Trust Agreement and any amendments thereof adopted by the Trustees immediately upon demand, and pending such execution and declaration of the parties agree to assume all the obligations under such Agreement and Declaration of Trust.

(b) Effective December 16, 2003, the Employer agrees that on or before the 10th day of each month he will make a contribution to the said DEFERRED COMPENSATION FUND at the rate of Four Dollars Fifty Cents ($4.50) per hour for each hour worked by each of his employees covered by the collective bargaining agreement, not to exceed forty (40) hours per week. Contributions to the Fund will be for the account of each employee in the Fund in accordance with such Plan as may be adopted by the Trustees. It is the intention of the parties that pursuant to ERISA, such Fund shall be established and at all times maintained for all purposes as a defined contribution plan. The Employer is not required to make contributions on behalf of employees first employed after December 15, 2001 for the first Ninety calendar days following the date of the employee's employment, provided that said employee had not been employed in covered employment under a collective bargaining agreement with Local 553 at any time during the thirty (30) months prior to the employee's date of employment.

(c) New employees first employed on or after December 16, 2004, that have not been employed in covered employment under a collective bargaining agreement with Local 553 at any time during the twenty four (24) months prior to the employee's date of employment the following shall apply:

1. The Employer is not required to make contributions to the Deferred Compensation Fund for the first twelve (12) months.

2. After twelve (12) months the Employer shall contribute the rate of $1.50 per hour in the same manner as described in (b) above.

3. After twenty four (24) months the Employer shall contribute the rate of $3.00 per hour.

4. After thirty six (36) months the Employer shall contribute at the full then current contribution rate.

(d) The plan to be adopted by the Trustees shall provide that an employee in covered employment who has worked at least one year under the collective bargaining agreement and who terminates employment for any reason, regardless of age shall be eligible for benefits. The Trustees are authorized to establish such lawful requirements as they deem appropriate with respect to termination of employment.

## SCHOLARSHIP FUND

SECTION 51:
(a) The Local 553 Scholarship Fund shall be established by the Union and the Industry pursuant to an Agreement and Declaration of Trust. Said Scholarship Fund shall be administered by a Board of Trustees with equal representation by the Union and the Industry. The Employer and the Union agree to prepare and execute said Trust Agreement and any amendments thereof adopted by the Trustees immediately and upon demand.

(b) The Local 553 Scholarship Fund will provide benefits in the form of scholarship awards to eligible dependents of covered employees who attend accredited college level institutions. The Trustees shall determine the number of scholarships to be awarded in an academic year, and the amount to be awarded to each scholarship winner. The Trustees shall also determine the method by which award winners will be selected.

# MERGER, ACQUISITION OR CONSOLIDATION

**SECTION 52:** (a) In the case of merger or any type of consolidation (except acquisition which is governed by (b) below) of the Employer with any other company or business of any other company, whether involving partnership, corporation, or any other form, the following shall prevail:

1.   If both companies prior to the merger or consolidation were covered by this collective bargaining agreement or counterpart thereof the employees in the successor enterprise shall be selected and shall have seniority as follows: The number of employees from each company to be placed on the combined seniority list shall be in the same proportion as the number of employees on the seniority list of each company on the preceding October 15.

2.   If the employer merges or consolidates his business with another company not covered by this collective bargaining agreement or counterpart thereof prior to the merger or consolidation, the employees of that company shall be placed at the bottom of the seniority list of the successor company.

3.   Employees shall be entitled to vacation benefits based upon full credit for their entire services with both employers covered by this collective bargaining agreement or counterpart thereof.

(b) In the case of the acquisition by the Employer of another company, or acquisition of the Employer's business by another company, or in the case of any other type of acquisition of business, whether involving partnerships, corporations or any other form the following shall prevail:

I.   If both companies prior to the acquisition were covered by this collective bargaining agreement or counterpart thereof, the employees of the acquired company shall be placed on the seniority list of the acquiring company below the employees of the acquiring company.

2.   If the Employer acquires another company not covered by this collective bargaining agreement or counterpart thereof prior to the acquisition, the employees of the acquired company shall be placed on the seniority list of the acquiring company below the employees of the acquiring company. If the Employer is acquired by another company the Employer will notify the Union of proposed sale and the matter of seniority will be subject to mutual agreement between the Union and the Employer.

3.   An Employer shall not be permitted to frustrate the purposes of this provision by maintaining a separate seniority list for the employees of an acquired business and thereafter attempting to establish a combined seniority list under paragraph A hereof or by any other means.

4.   Employees shall be entitled to vacation benefits based upon full credit for their entire service with both Employers covered by this collective bargaining agreement or counterpart thereof.

# SEPARABILITY OF PROVISIONS

**SECTION 53:** (a) If any section of this Agreement should be held invalid by operation of law or by any tribunal of competent jurisdiction or if compliance with or enforcement of any section should be restrained by any such tribunal the remainder of this Agreement or the application of such section to persons or circumstances other than those to which it has been held invalid or as to which compliance with or enforcement has been restrained shall not be affected thereby.

(b) In the event that any section is held invalid or enforcement or compliance has been restrained as set forth above the parties affected thereby shall enter into immediate collective bargaining negotiations upon the request of either party for the purpose of arriving at a replacement for such section during the period of invalidity or restraint. If the parties do not agree on a replacement the issue may be submitted to arbitration by either party.

# ENTIRE AGREEMENT

**SECTION 54:** The parties acknowledge that during the negotiations which resulted in this agreement. each had the unlimited right and opportunity to make demands and proposals with respect to any subject matter within the area of collective bargaining and the understandings and agreements arrived at by the parties after the exercise of that right are set forth in this agreement and in any written supplements thereto.

# EFFECTIVE DATE AND TERMINATION

**SECTION 55:** This Agreement shall become effective and be retroactive to December 16, 2004 and shall remain in effect until and including December 15, 2007.

# OIL DRIVERS

The following provisions shall apply only to oil drivers:

## DAY OR NIGHT WORK

**SECTION 56:** Senior men shall be given the preference for day or night work. The premium for night work shall be nine dollars ($9.00) per night.

## SIXTH DAY

**SECTION 57:** In any company or depot where there is a seniority list, or in any company or depot having a single seniority list. no employee who in any calendar week has worked or had the opportunity to work at driving and/or any other work at the applicable contract wage scale for the company five (5) days shall be allowed to work for a sixth day of the week until all employees on the seniority list have worked or have had the opportunity to work, in the order of seniority. five (5) days in that week, and no employee shall be allowed to work for a seventh day of the week until all employees on the seniority list have worked or have had the opportunity to work at driving.work and/or any other work at the applicable contract wage scale for the company in the order of seniority, six (6) days in that week unless there are no other employees covered by this agreement and on that particular seniority list available.

## OUTSIDE TERRITORY

**SECTION 58:** No employee shall be compelled to start work at any location outside the territorial jurisdiction covered by Local 553. Any employee who starts work at a location outside the territorial jurisdiction covered by Local 553 which is other than his usual starting location shall be paid travel time to and from his usual location plus any expenses of such travel.

## STARTING TIME

**SECTION 59:** The day's work is to start at 6:00 A.M., 7:00 A.M., 8:00 A.M.. 5:00 P.M. and 6:00 P.M., all or any of these starting times to be used at the discretion of the Employer. There shall also be a starting time of 12:00 Noon, to be utilized only during the heating season and to be limited to a maximum of two drivers per company. Senior men shall have their preference of starting times. If any fuel oil chauffeur starts later than 6:00 P.M., time will revert to 6:00 P.M. It is understood and agreed upon by and between both parties that all fuel oil chauffeurs are to be started on the hour. If a man starts work at any time prior to the hour at the request of the Employer, time shall revert back to the preceding hour. If any fuel oil chauffeur starts work at the request of the Employer before 6:00 A.M., he is to be paid time and one-half, up to 6:00 A.M. If the Employer uses 6:00 A.M. as a starting time in the heating season (October 15 to April 15), he shall use the same percentage of employees at the 6:00 A.M. starting time in the slack season (April 15 to October 15). Fuel Oil chauffeurs are expected to do all the work that they have been accustomed to doing, except that if a chauffeur feels that some part of his work involves undue physical risks, especially measuring tanks, he is to do it for the first time and report it to the Employer. If upon complaint the Employer does not investigate the risk, the men shall not do the work involved. Any dispute over undue physical risk shall be discussed by the delegate and the Employer and shall be subject to the grievance and arbitration procedure. All fuel oil chauffeurs covered by this Agreement are to receive not less than a full day's pay if they report to work in that day. Each fuel oil chauffeur will punch his own card as he goes to work and as he finishes the day.

## POSTING

**SECTION 60:** (a) Insofar as it can be determined in advance according to the nature of the Employer's business and within the Employer's discretion the number of fuel oil chauffeurs on the seniority list is to be posted by 3:30 P.M. on the previous day. Employees shall not be compelled to telephone the Employer on Fridays or the eve of a holiday if the list has not been posted by 3:30 P.M. on that day. In the event an employee completes his work and leaves prior to 3:30 P.M., the Employer shall notify him by telephone if he is posted for work the following day. If the Employer is unable to reach the employee, the employee shall be reimbursed for calls to the Employer to determine whether the employee has been posted for work

(b) In the event not all of the specific number of men posted for a day's work appear for work, the Employer must replace each of the men who do not appear with other men in the order of seniority as long as there are men available on the seniority list capable of doing the available work. In the slack season, the Employer may replace each of the men who do not appear with other men in order of seniority capable of doing the available work, or may dispatch the absent employees' work to other men booked and working that day, or some combination thereof. In no event shall any of the available work be subcontracted out.

(c) In the event that men posted fail to report as directed, replacements shall be paid from the time they punch in for work after arrival at their place of work with a guaranteed eight (8) hours of pay. It is understood that the Employer shall make every effort to get the next man in order of seniority, by telephone.

**SECTION 61:** The Company shall follow the same practice for replacing night work as is prescribed for day work.

## EQUIPMENT

**SECTION 62:**

(a) No driver shall be compelled to wash or polish a truck.

(f) In the event of any spill at the point of delivery the fuel oil driver shall notify the Employer promptly to arrange for clean-up and shall make a reasonable effort to block off the spill area.

(g) This provision with respect to the hiring of trucks, for one specific grade or grades of oil does not apply to the Employer whose custom it has been, or whose custom it becomes, to engage in the sale of all or several grades of oil, but who does not have trucks for the delivery of any specific grade or grades of oil. So that, any Employer who in the past has not had any Bunker oil, light oil or other type of trucks, or who in the future has no Bunker oil, light oil or other type of trucks, but who has engaged or does engage in the sale of the particular product for which he has not had or does not have specific trucks, can engage truckmen to deliver his oil in their trucks without using the fuel oil chauffeurs on his working list.

## SALE OF TRUCKS

**SECTION 63:** It is expressly understood and agreed that it is not a violation of this Agreement for Employers to sell and transfer any of their trucks to any or all of their fuel oil chauffeurs: provided, however, that the performance of any of the Employer's work by the former fuel oil chauffeur to whom the sale and transfer of the trucks have been made shall constitute a prohibited evasion of this Agreement.

## NEW DEPOTS

**SECTION 64:** It is agreed by both parties that depot seniority shall prevail. If a firm closes one depot and opens a new depot, the fuel oil chauffeurs from the closed depot have first preference in the new depot. In the event that a new depot is opened the fuel oil chauffeurs on the seniority lists in the other depots belonging to the firm will receive first preference.

## SLACK SEASON

**SECTION 65:** (a) During the slack season of the year preference shall be given to the fuel oil chauffeurs on the seniority list, and that the Shop Steward shall be the No. I fuel chauffeur on the list.

(b) During the slack season, April 15 to October 15, any employee who according to seniority would not have steady employment shall be entitled to a leave of absence and maintain his full seniority rights during that period. Any man so described must report to the Shop Steward and the Employer between 6:00 A.M. and 8:00 A.M. or between 5:00 P.M. and 6:00 P.M. on October 15 and sign the seniority roster in order to protect his seniority and the signing of the seniority roster by the employee jointly acknowledged by and in the presence of the Shop Steward and the Employer, shall constitute a certification which is final and binding upon the Employer, and the Union, and the employee as to the availability of such men when called by the Employer. If October 15 falls on a Saturday or Sunday, the reporting day shall be the next work day. Any man failing to report as above specified shall forfeit all seniority rights.

# TERMINAL MAINTENANCE EMPLOYEES

The following provisions shall apply only to terminal maintenance employees:

## LUNCH PERIOD

**SECTION 66:** There shall be a one-hour lunch period or a half-hour lunch period if agreed to by the Employer and the employees, said lunch period to be taken between the fourth and sixth hours of the day.

## NIGHT PREMIUM

**SECTION 67:** The premium for night work shall be nine dollars ($9.00) per night.

## SENIORITY

**SECTION 68:** In any company or depot where there is a seniority list, or in any company or depot having a single seniority list, no employee who in any calendar week has worked or had the opportunity to work at maintenance work and/or any other work at the applicable contract wage scale for the company five (5) days shall be allowed to work for a sixth day of the week until all employees on the seniority list have worked or have had the opportunity to work, in the order of seniority, five (5) days in that week, and no employee shall be allowed to work for a seventh day of the week until all employees on the seniority list have worked or have had the opportunity to work at maintenance work and/or any other work at the applicable contract wage scale for the company, in the order of seniority, six (6) days in that week unless there are no other employees covered by this Agreement and on that particular seniority list available.

## STARTING TIME

**SECTION 69:** In the heating season (October 15 to April 15) starting times shall be 7 A.M., 8 A.M., and 9 A.M. and night work shifts shall start at 4 P.M., 5 P.M., and 6 PM. Plants which work on three eight (8) hour shifts need not be limited to these starting hours and may operate on the three-shift basis with the starting hours appropriate to such operation. In the slack season (April 15 to October 15) the only starting hours used by the Employer shall be from among the following: 7 A.M., 8 A.M., 9 A.M., 3 PM., 4 PM., 5 P.M., 12 M, and I A.M. Senior men shall have their preference of starting times. All Maintenance Men covered by this Agreement are to receive not less than a full day's pay if they are ordered to report for work and do report to work. An employee's Monday starting hour shall be the same hour for the entire week, Monday through Friday. All men are expected to do all the work that they have been accustomed to doing. If the Employer uses 7:00 A.M. as a starting time in the heating season (October 15 to April 15), he shall use the same percentage of employees at the 7:00 A.M. starting time in the slack season (April 15 to October 15). Each Maintenance Man will punch his own card as he goes to work and as he finishes the day or night.

## POSTING

**SECTION 70:**
(a) Insofar as it can be determined in advance according to the nature of the Employer's business and within the Employer's discretion the number of Maintenance Men on the seniority list to start at 7 A.M. is to be posted by 3:30 P.M. on the previous day. Employees shall not be compelled to telephone the Employer on Fridays or the eve of a holiday if the list has not been posted by 3:30 P.M. on that day. In the event an employee completes his work and leaves prior to 3:30 P.M., the Employer shall notify him by phone if he is posted for work the following day. If the Employer is unable to reach the employee, the employee shall be reimbursed for calls to the Employer to determine whether the employee has been posted for work.
(b) In the event not all of the specific number of men posted for a day's work appear for work, the    Employer must replace each of the men who do not appear, with other men in the order of seniority as long as there are men available on the seniority list capable of doing the available work.
(c) If a man starts work at any time prior to the hour at the request of the Employer, time shall revert back to the preceding hour.
(d) Any time the plant is open for business there shall be at least one employee covered by this Agreement employed.

## NO JANITOR WORK

**SECTION 71:** Maintenance Men shall not be compelled to do janitorial work.

## BARGES AND TANKERS

**SECTION 72:** Barges and tankers may be discharged only when there are employees covered by this Agreement employed to do the necessary work. If the plant is closed at night and there are no employees covered by this Agreement employed that particular night and it is necessary to discharge a tanker or barge, the employee in order of his seniority shall be called to do the necessary work in the discharging of said tanker or barge and shall be guaranteed a full day's pay. Employees shall not be required to stand by but may accept such assignment on a seniority basis.

## ROVING ASSIGNMENTS

**SECTION 73:** Any Employer who used a roving crew shall pay such employees fifteen (15) cents per mile for the use of their cars. The Employer shall pay automobile insurance premiums for employees using their own cars to cover roving assignments or, in the alternative; the Employer shall provide a vehicle for the use of the employee for such assignments.

## SENIORITY

**SECTION 74:**
(a) It is agreed by both parties that depot seniority shall prevail. If a firm closes one depot and opens a new depot, the Maintenance Men from the closed depot have first preference in the new depot. In the event that a new depot is opened the Maintenance Men on the seniority lists in the other depots belonging to the firm will receive first preference.

(b) Senior men shall be given the preference of day or night work.

(c) Shift choices on the basis of seniority shall be retained for a minimum of three (3) months.

## SLACK SEASON

**SECTION 75:**
(a) It is further understood and agreed upon that during the slack season of the year, preference shall be given to the Maintenance Men on the seniority list, and that the Shop Steward shall be the No. 1 Maintenance Man on the list.

(b) During the slack season, April 15 to October 15, any employee who according to seniority would not have steady employment shall be entitled to a leave of absence and maintain his full seniority rights during that period. Any man so described must report to the Shop Steward and the Employer between 6 A.M. and 8 A.M. or 5 P.M. and 6 P.M. on October 15 and sign the seniority roster in order to protect his seniority, and the signing of the seniority roster by the employee, jointly acknowledged by and in the presence of the Shop Steward and the Employer, shall constitute a certification which is final and binding upon the Employer, and the Union, and the employee as to availability of such men when called by the Employer. If October 15 falls on a Saturday or Sunday, the reporting day shall be the next work day. Any man failing to report as above specified shall forfeit all seniority rights.

# SERVICEMEN, INSTALLATION MEN, INSTALLATION MEN'S HELPERS AND SERVICEMEN TRAINEES

The following provisions shall apply only to Servicemen, Installation men,
Installation men's helpers and Servicemen trainees:

## TRAINEES

**SECTION 76:** Before the Employer hires a Trainee, all of the men on the seniority roster shall be working. If an employee is currently performing work performed by other Servicemen at the Class A rate of pay and had previously worked as a Serviceman, or Installation Man, or Installation Man's Helper, or Trainee in the industry, the previous time so spent shall be added to the time spent by the employee in his current employment in determining whether the three (3) year qualifying period for Class A pay has been satisfied. If the total of such combined time aggregates three (3) years, he shall be paid the rate of pay prescribed for Servicemen-Class A. Service trainees shall at the time of qualifying for Class A work be added to the seniority list as of said date. The seniority of service trainees shall be subordinate to Class A servicemen. The Employer shall notify the Union at the expiration of the service trainee's qualifying period whether the trainee has qualified. Consistent with the needs of the operations involved the Employer shall, in assigning employees to various types of installation or service work, take into account the preferences of the qualified men on a seniority basis. In the event of any dispute over length of service for the purposes set forth above, the disputes shall be processed through the grievance procedure and, if unresolved, shall be referred to arbitration. The employees shall continue to perform those duties which they performed in the past. However, it is the sense of this Agreement that employees covered by this Agreement shall not be used to make fuel deliveries in order to avoid the use of delivery trucks. Complaints of the abuse of the spirit or letter of this provision shall be made the subject of special and prompt attention and discussion by the Union, the Employer, the Employer Associations, and the Arbitrator. Unresolved disputes over this provision shall be referred to the Arbitrator for decision.

## DAY AND NIGHT WORK

**SECTION 77:** Senior men shall be given the preference of day or night work, provided they are capable of doing the work. The premium for night work shall be nine dollars ($9.00) per night. Any day's work that starts at or after 1:00 P.M. shall be regarded as night work.

# STARTING TIME

**SECTION 78:**
(a) Within ten (10) days after the date the Employer signs this Agreement. he shall state in writing to the Union his choice of the starting hours of day or night work, from among the following alternatives, and the hours so stated in writing shall be the only starting hours the Employer shall use for the entire term of this contract:

**DAYS:** The starting hours shall be 7:00 A.M. and 8:00 A.M. In the period between November 15th and March 15th, there shall be the additional starting hour 10:00 A.M. There shall be a 10 A.M. starting time in the slack period March 15 to November 15. However, no more than 10% of the Servicemen on the seniority list may be booked at the 10 A.M. starting hour in this slack period, provided that companies with 10 or fewer men on the seniority list may book only one man at the 10 A.M. starting hour.

**NIGHTS:** (1) The Employer shall choose 1:00 P.M., 2:00 P.M. and/or 12:00 Midnight as starting hours.
(2) The Employer may choose as an additional starting hour, either 5:00 P.M. or 6:00 P.M.

(b) A day's work shall start at the times stated and designated in writing by the Employer, as provided above. Senior men shall have their preference of starting times. If any employee starts later than his scheduled starting time, time will revert to his scheduled starting time. To illustrate, if an employee is scheduled to start at 7:00 A.M. but is called to work at 7:30 A.M., time will revert to 7:00 A.M. It is understood and agreed upon by and between both parties that all employees are to be started on the hour. If a man starts work at any time prior to the hour at the request of the Employer, time shall revert back to the preceding hour. If an employee starts work at the request of the Employer before 7:00 A.M., he is to be paid time and one-half, up to 7:00 A.M. If the Employer uses 7:00 A.M. as a starting time in the heating season (October 15 to April 15), he shall use the same percentage of employees at the 7:00 A.M. starting time in the slack season (April 15 to October 15). All employees covered by this Agreement are to receive not less than a full day's pay if they report to work in that day. Each employee will punch his own card as he goes to work and as he finishes the day.

(c) Insofar as it can be determined in advance according to the nature of the Employer's business and within the Employer's discretion, the number of employees on the seniority list is to be posted by 3:30 PM. on the previous day. Employees shall not be compelled to telephone the Employer on Fridays or the eve of a holiday if the list has not been posted by 3:30 P.M. on that day. In the event an employee completes his work and leaves prior to 3:30 P.M., the Employer shall notify him by telephone if he is posted for work the following day. If the Employer is unable to reach the employee, the employee shall be reimbursed for calls to the Employer to determine whether the employee has been posted for work.

(d) In the period between April 15th and October 15th, the employees normally required for Saturday and Sunday shall be posted no later than 3:30 P.M. of the Thursday immediately prior to such Saturday and Sunday.
(e) All work Monday through Sunday shall be assigned on a strict seniority basis.

# STAND-BY

**SECTION 79:**
The Employer may require a Serviceman or Installation Man to stand by for Saturday, Sunday, or a holiday. An employee ordered to stand by shall be paid a day's pay at the rate of time and one-half for a Saturday and double time for a Sunday or a holiday regardless of whether the employee actually performs work that day. Standby time shall be by seniority only. In the event an employee is called back after the completion of his regular work day he shall receive double the straight-time hourly rate, with a minimum of two (2) hours' pay at double time (that is, four (4) hours pay at the straight-time rate). Such employee shall complete all work assigned to him by the Employer.

# WORK PROTECTION

**SECTION 80:**
Companies that wish to engage additional employees may do so only after the employees on their own seniority lists are working provided such employees are capable of doing the work.
The Employer shall not under any circumstances contract out or subcontract any work while any man on the seniority roster is on layoff. It is understood that the Employer may contract out vacuum cleaning work, and that an Employer who has not had and continues not to have an installation department and who has contracted out installation work may continue to contract out such installation work.
An Employer who has an installation department shall not subcontract out any installation work on Saturdays, Sundays, holidays, or any other day until all of the qualified employees on the company's seniority list are working or have been offered the opportunity to work. It is the intention of the parties that no service or installation work shall be subcontracted so as to reduce the present number of employees.

(a) The Employer shall continue, during the term of this Agreement, any wages, vacations and holiday benefits more favorable than those contained herein.

(b) No employee shall be compelled to wash or polish a vehicle.

(c) If the practice of vacuum cleaning is abused by either the Employer or the employees, the matter is to be discussed by the Union and the Employer and failing satisfactory adjustment, the dispute will be subject to the grievance and arbitration procedure.

## SENIORITY

**SECTION 81:** It is agreed by both parties that seniority shall prevail in accordance with classification. If a firm closes at one location and opens at a new location, the employees from the closed location shall have first preference at the new location. In the event that a new location is opened, the employees on the seniority lists in the other locations belonging to the firm shall receive first preference. All work Monday through Sunday shall be assigned on a strict seniority basis. The same shall also apply to standby time.

## SLACK SEASON

**SECTION 82:**
(a) It is further understood and agreed upon that during the slack season of the year, preference shall be given to the employees on the seniority list, and that the Shop Steward shall be the No. 1 employee on the list.

(h) During the slack season, April 15 to October 15, any employee who according to seniority would not have steady employment shall be entitled to a leave of absence and maintain his full seniority rights during that period. Any such employee must report to the Shop Steward and the Employer between 6 A.M. and 8 A.M. or between 5 P.M. and 6 P.M. on October 15 and sign the seniority roster in order to protect his seniority. And the signing of the seniority roster by the employee, jointly acknowledged by and in the presence of the Shop Steward and the Employer, shall constitute a certification which is final and binding upon the Employer, and the Union, and the employee as to availability of such men when called by the Employer. If October 15 falls on a Saturday or Sunday, the reporting day shall be the next work day. Any employee failing to report as above specified shall forfeit all seniority rights.

## VACATIONS

**SECTION 83:** (a) Vacation shall be granted to employees within the period beginning April 15 and ending September 15 each year. Choice of vacation times shall be made by the employees in the order of seniority and shall be scheduled prior to and posted no later than May 1. All of the weeks of the vacation season shall be open for vacation choice by the employees. In the event the Employer for the necessities of the business turns down an employee's vacation time pick, he shall offer said employee an alternative vacation time satisfactory to the employee. (b) At least one (1) employee on the seniority list in service work and (1) employee in installation work, if any, shall have the right to select a holiday week in his vacation time. (c) In any case where the vacation period includes one of the designated holidays, the employee is to receive the holiday pay for that day in addition to his vacation pay provided he would have been posted for work for two (2) days during that week if he had not been on vacation.

## CAR USE

**SECTION 84:** The Employer shall pay a Serviceman or Installation Man who uses his own car during working hours, the sum of Six Hundred and Twenty Five ($625.00) Dollars per month, which said sum shall cover the use and operation of said car; provided, however, that the Employer at his or its election, may supply a car to the Serviceman or Installation Man in lieu of the aforesaid payment.

## TOOLS

**SECTION 85:** In the event of a theft of tools of an employee covered by this Agreement as a result of a break-in of the employee's or Employer's vehicle and this theft is reported by the employee to the local police precinct, the Employer shall cover in full the replacement cost for tools of the same quality as those stolen.

# DISPATCHERS

**SECTION 86:**Dispatchers covered by this agreement shall be entitled to the same conditions as oil drivers.

**FOR EMPLOYERS REPRESENTED BY THE NEW YORK OIL HEATING ASSOCIATION, INC.**

NEW YORK OIL HEATING ASSOCIATION, INC:

By: _____     By: _____

               Signature                                        Signature

_____     _____

               Title                                         Title

On behalf of each Employer who has delivered a written authorization to NYOHA.

**FOR EMPLOYERS NOT REPRESENTED BY THE ABOVE ASSOCIATION:**

Name of Employer: _____

By: _____

                              Signature

_____

                              Title

COAL, GASOLINE & FUEL OIL TEAMSTERS
CHAUFFEURS, OIL BURNER INSTALLATION,
MAINTENANCE, SERVICEMEN AND HELPERS
OF NEW YORK CITY AND VICINITY, NASSAU
AND SUFFOLK COUNTIES, NEW YORK
**LOCAL UNION No. 553**, affiliated with the
INTERNATIONAL  BROTHERHOOD OF TEAMSTERS
265 West 14th Street. New York, NY 10011
Tel.  212 929 – 6828

      **FOR UNION LOCAL NO. 553:**



_____

                        Secretary – Treasurer

_____

                        President